Mc'EaRLAND, J.,
delivered tbe opinion of the court:
The estate of Mrs. Martha B. Epps, in Tennessee, was being administered as an insolvent estate, under the bill hied for that purpose by her personal representative, when A. 0. Page and others, filed their petition setting up a claim against the estate, and asking to be made parties. The chancellor rejected the claim, and the petitioners have appealed. The bill was filed the 18th of June, 1868, and the petition of Page, June, 1872, so the claim was barred by the statute of three years (Page being a nonresident), unless this result is saved upon the following ground: Pages, in their petition, show that before the qualification of a personal representative in Tennessee, in July, 1867, they filed an attachment bill in the chancery court at Memphis, asking for and obtaining an attachment under the provision of the law allowing the process “where any person liable for any debt or demand, residing out of the state, dies leaving property in the state.” [See Shannon’s Code, sec. 5211 (7), and notes 37, 38.]’ It being alleged that Mrs. Epps resided in Virginia, and had died leaving lands in Shelby and Madison counties, in this state, these lands *134 were attached accordingly, but the cause does not appear to,have been prosecuted to judgment. These facts are stated in the petition, and it is assumed that a lien was acquired on the lands; but petitioners express their willingness to share pro rata with the other creditors, and not insist upon priority.
Do these facts save the bar of the statute? It may be conceded that, under our attachment laws, the bill was properly hied, and a lien acquired upon the land attached, which would have been effectual by prosecuting the case to a decree, but which would be lost if the 'Cause be abandoned or successfully defended [or insolvency of the estate is subsequently suggested. See note 37 under sec. 5211 of the Code]. Upon the filing, by the executor, of the insolvent bill, the chancellor might have enjoined the prosecution of the attachment bill, or have permitted it to proceed to a decree, but it does not appear any order was made in regard to it. The suggestion of insolvency alone in'the county court, and advertisement operated as an injunction against bringing suits, but allowed suits already brought to proceed to judgment, to be certified to the county court. The petitioners, after the filing of the insolvent bill, might have come in under the same rule applicable to other creditors, either to claim a pro rata, or to claim priority under their attachment, a question to be determined in the insolvent ease [no priority obtained by such attachment where the estate is insolvent. Suggestion of insolvency defeats priority. See note 37, under sec. 5211 of the Code]. This, either before or after a decree in the attachment case; but the question is, should tb^ey have come in. within the time limited by tbe statute of limitations? Does the fact that the petitioners had the attachment bill pending, give them any longer time in which to appear in the insolvent proceedings?
Notwithstanding the pendency of the attachment bill, we hold that they should have presented themselves within the time limited, if they desired to become parties to the *135 insolvent- bill. We think tliis question is decided in Martin v. Blakemore, 5 Heis., 50.
Tbe attachment bill was not a suit against the administrator. It could, at most, have given a right to satisfaction out of the land attached, but the petitioners failed to prosecute their attachment bill to a decree, or to ask for any relief in the other case in the time limited. The filing of the insolvent bill did not, of itself, destroy or defeat the rights acquired by the attaching creditor [see contra, said note 37], but the creditor lost his right to come in as a party to the insolvent bill by failing to come in within the proper time.
It is argued that the statute of three years is not available to protect the devisees of the realty; that this statute only protects the personal representative. But we think the plea of the personal representative, is effectual, whether satisfaction is sought out of the personalty or realty.
It is next argued that as the will of Mrs. Epps directs that her lands in Madison county be sold for the payment of debts, that this creates a trust in favor of creditors, and that the statute of three years does not apply, so far as to protect this land. We think no specific trust was created in favor of any particular creditor. The will only designated certain property to be applied to debts; the law makes all the liability. But the estate is protected against all demands not made within the time, as much as if the debts were a charge upon the entire estate, under the law. We do not understand the decisions of this court to be opposed to this view.
There is a remark, apparently to this effect, in the opinion in the ease decided at the last term, of Mitchell v. Cal-loway. The question in this case, however, was, whether Calloway, the administrator of Mitchell, and who claimed a debt due him from the estate, was barred because he had not retained his debt out of the assets in his hands within the time. [On this question, see Shields v. Alsup, 5 Lea, 516-525.] It. was held that he had no legal assets in his *136 bauds, and that bis failure to retain bis debt out of tbe equitable assets, did not bar him. It was upon tbis ground tbe ease was decided. It would require very strong authority to induce us to bold that where a testator directs bis debts to be paid, and designates a certain part of bis property to be thus applied, that tbe statute of limitations, intended to protect Ms estate against fraudulent claims, is thereby abrogated, and that all debts may come in without limit of time. Tbe trust thus imposed upon tbe executor, with respect to tbe property thus devised, is not materially different from tbe trust which tbe law imposes upon him, to apply tbe personal assets to tbe payment of tbe debts, and there can be no good reason why tbe statute should not apply in one case as in tbe other. It is for tbe protection of tbe estate in either case.
Perry in bis work on Trusts [sec. 559], says: “In tbe United States both tbe real and personal property are liable for the debts of a deceased person, and no valid trust can be created by will for tbe payment of debts, in either personal or real estate. Tbe statutes of tbe several states point out bow estates shall be administered for tbe payment of debts.” . . . And be concludes: “The claims of a creditor against tbe estate of a deceased person will be barred by tbe statute of limitations, notwithstanding certain property is given in trust or charged with the payment of such claims.” Tbe only qualification of this doctrine is where tbe creditors assent to tbe trust, and the executor settles tbe estate accordingly; then the executor becomes a trustee for tbe creditors, wbo are estopped from insisting upon a legal settlement. Various authorities are cited by tbe author, and we do1 not doubt tbe conclusion.
This record presents an anomaly to which we will refer. Mrs. Epps resided in Virginia, and leaving a large estate, both in Virginia and North Carolina,'and also' lands in Tennessee. So far as we see, the creditors wbo are parties in tbe present case, are residents of Virginia. If there were creditors in tbis state, our courts would distribute tbe assets *137 bore among such creditors, and would not transmit the assets to Virginia, and leave onr domestic creditors to go there for satisfaction. Nut as the creditors seem to be all of Virginia, and an administration pending there, we ''do not know that it is the proper course to distribute the assets here among such of the Virginia creditors as choose to come, or whether the proper course would be to transmit the assets to the general administrator. This question has not been made, and we refer to it for the purpose of saying that it is not to be understood as decided. The only question we have been called upon to decide upon the appeal of Page, is, whether he presented his claim in time.
Affirm the decree, with costs.